# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                                **Case No. 16-CR-13**

**DEANDRE MORGAN**
    **Defendant.**

## STATEMENT OF REASON MEMORANDUM

Defendant Deandre Morgan pleaded guilty to assisting in the robbery of a cell phone store, contrary to the Hobbs Act, 18 U.S.C. § 1951, and I set the case for sentencing. In imposing sentence, the district court must first determine the defendant's imprisonment range under the guidelines, then make an individualized assessment of the appropriate sentence based on the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Kappes, 782 F.3d 828, 837 (7th Cir. 2015).

## I. GUIDELINE CALCULATION

Defendant's pre-sentence report ("PSR") set a base offense level of 20, U.S.S.G. § 2B3.1(a), added 5 levels because a co-defendant brandished a firearm, § 2B3.1(b)(2)(C), 2 levels because store employees were "restrained" during the robbery, § 2B3.1(b)(4)(B), and 1 level based on the value of the merchandise stolen, § 2B3.1(b)(7)(B). The PSR then subtracted 3 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final level of 25. The PSR further determined that defendant fell in criminal history category of I, producing an imprisonment range of 57-71 months. I adopted these calculations without objection.

## II. SECTION 3553(a)

**A. Sentencing Factors**

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Id. This so-called "parsimony provision" serves as the "overarching" command of the statute, see Kimbrough v. United States, 552 U.S. 85, 101 (2007), and the judge's explanation of the sentence must be

consistent with its meaning, see United States v. Pennington, 667 F.3d 953, 957 (7th Cir. Cir. 2012).

While the court must as part of its analysis consider the type and range of sentence recommended by the guidelines, it "may not perfunctorily impose a guidelines sentence or even presume that such a sentence is appropriate in a given case." United States v. Warner, 792 F.3d 847, 855 (7th Cir. 2015). "Ultimately, it falls on the district court to weigh and balance the various factors and to 'make an individualized assessment based on the facts presented.'" Id. (quoting Gall v. United States, 552 U.S. 38, 50 (2007)).

**B.    Analysis**

**1.    The Offense**

The defendants charged in this case committed a series of cell phone store robberies in November and December 2015. This defendant was involved in just one of those crimes, the November 24, 2015, robbery of a Verizon Wireless store located in Milwaukee.

Verizon employee "J.S." reported that an unmasked male, later identified as defendant, came into the store and asked about several different phones available for sale. A short time later, co-defendants Myron Burns and Rudy Payne entered the store wearing masks and ordered the two victim employees to the back room, with Payne brandishing a handgun. Burns and Payne followed the employees to the back room. At one point, Payne punched "M.J." in the face and ordered him to "sit down." While in the back room, J.S. told Burns and Payne the phones were in the safe; Burns ordered J.S. not to sound any alarms. J.S. opened the safe, and defendant gave Payne a duffel bag that defendant retrieved from a backpack. Upon acquiring the devices from the safe, the defendants fled the store with approximately 38 stolen

3

iPhones, valued at over $26,000.

Surveillance footage from the store corroborated the accounts given by the victim employees. Defendant's face was clearly visible in the footage, and he made no attempt to conceal his identity for the majority of the robbery. A confidential source later reported to law enforcement that he saw news footage related to the robbery, recognizing the suspects as defendant, Burns, and Payne. The source also provided information about the firearm Payne used during the robbery, which officers subsequently recovered.

Defendant explained that his involvement in the offense stemmed from a desire to help his friend Payne, who on the day of the incident asked him to assist, indicating that he would get paid some money. During the robbery, defendant was not provided with a mask and was instructed to go into the store and distract the employees. He received $500 for his trouble. This was his only criminal involvement with the co-defendants, who committed multiple additional armed robberies.

### 2. The Defendant

Defendant was very young, just 21 years old, 19 when he committed this robbery. His criminal history was limited to a juvenile adjudication from when he was 14 involving his possession of a paring knife at school.

As detailed in the PSR, defendant experienced an unstable childhood. His mother had substance abuse and mental health problems, and he never knew his father. He had several out of home placements and could not recall any positive influences during his youth, except perhaps for his grandmother, who died in 2014. He did appear to have support from one of his former foster mothers, with whom he was living at the time of sentencing.

The PSR also related defendant's significant correctional treatment needs, including

serious mental health issues, which had only sporadically been addressed, and substance abuse problems, primarily marijuana use. Defendant admitted being under the influence at the time of the offense. He also needed to complete his GED and learn some vocational skills. His work record consisted of sporadic assignments through a staffing company.

After an uneven start on pre-trial release, including marijuana use, defendant seemed to do better prior to sentencing. He secured a job at a pizza place, made an appointment with a psychiatrist, attended counseling, and tested negative.

### 3. The Sentence

The guidelines called for a term of 57-71 months, based primarily on the aggravated offense conduct committed by the co-actors. However, I found such a sentence greater than necessary for this defendant.

First, while the offense was quite serious, defendant's role in it was limited. He did not participate in the planning but rather was asked by his friend Payne to help on the day of the crime. He basically acted as a scout or a distraction, and then handed Payne a bag for the stolen phones. He was not given a mask, did not carry a gun or confront the victims, and made just $500.

I also took into account in evaluating culpability defendant's youth, barely an adult at the time; his cognitive limitations and mental health issues, discussed in the PSR; and his substance abuse, which likely affected his ability to make good decisions. Given his age and cognitive issues, he was more susceptible to peer pressure and to making impetuous and ill-considered decisions, as the Supreme Court discussed in Roper v. Simmons, 543 U.S. 551, 569 (2005). While no longer technically a juvenile when he did this, defendant was barely an adult, and his maturity level and cognitive functioning were likely at the level of juvenile. Payne,

5

who got him into this, was 30 years old. A prison term within the range was not necessary to provide just punishment given these circumstances.

Second, a prison term within the range was not needed to protect the public, given defendant's minimal record and non-violent nature, or to deter, as he had never been to prison before his arrest, after which he spent over six months in custody. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). It appeared the time defendant spent in custody after arrest has had an impact. As discussed above, after some issues on bond earlier in the case, things seemed to stabilize as sentencing approached.

Finally, defendant made efforts to cooperate with law enforcement. Although he had limited information to offer (given his minimal involvement with the robbery crew), it appeared he was truthful and came forward in timely fashion. His willingness to provide information also suggested that he was willing to sever ties with criminal associates, which in turn suggested better behavior in the future.

Under all the circumstances, I found a sentence of time served followed by three years of supervision sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence accounted for defendant's limited role, reduced culpability, minimal record, and cooperation, while still providing for just punishment and deterrence.

### III. CONCLUSION

For these reasons, I committed defendant to the custody of the Bureau of Prisons for a period of time served, followed by three years of supervised release. I selected the maximum

supervision term to ensure that defendant's treatment needs were addressed, that he maintained legitimate employment, and that he paid any restitution. As conditions, I included mental health and substance abuse treatment.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2017

/s Lynn Adelman
LYNN ADELMAN
District Judge